Services, Incorporated, for argument not concluded in the minutes, sir, by Mr. Gonzaga from VFL. Good morning. Mark Gonzaga, Plaintiff's Appellants. I would reserve three minutes for rebuttal. This case presents some rather basic issues of Michigan tort law. First, the trial judge dismissed both the negligence and the gross negligence case on the basis of duty. She was, I believe, a little too influenced by the Foltz decision, the Supreme Court case from a few years ago. The fact is, Foltz was, quote-unquote, clarified by the Michigan Supreme Court a couple of In Loewenke, the Supreme Court reaffirmed long-established Michigan common law with respect to when a duty exists, particularly, more particularly, with respect to when a duty exists when a contract is in play. And what the Michigan Supreme Court did was to establish, or I should say reestablish, the fact that where you have a contract and you are acting on that contract, when you undertake based on that contract, and you act negligently, you owe a duty of due care. But the question is to whom, Mr. Gonzaga? I mean, it's one thing to say a snowplow operator who negligently strikes a pedestrian with his snowplow can be liable and tort to that pedestrian. But isn't it another thing altogether to say that a party performing under a contract can be liable to the other party in that contract for negligent performance of the contracted duty? I can't, well, I'll let you answer this. Yes. Okay. Go back to the Hart v. Ludwig case. Hart v. Ludwig, old time, well-established Michigan Supreme Court law, which in fact discussed what is, in fact, the real issue that's here when you're talking about contract versus tort, which is could contract law be subsumed by tort? That's really what these fights are about. And what Hart v. Ludwig establishes quite clearly is that the same dichotomy that exists when you have contracting parties exists with respect to Loewenke's determination of third parties. It is no different. Can you explain what you mean by this? Yes. If I am bound by a contract to somebody, I am in no different position than the rest of the world if my contracting party injures me with their negligence. There is no distinction. I'm working as an independent contractor at an apple orchard. And the person I'm contracted with for that knocks over the ladder I'm working on. There's no question in that circumstance that once he acts in that capacity and he commits a negligent act, he is a duty to me. Was Hart a case where the other party of the contract was the defendant? No. Hart was... I couldn't find any such case. I don't keep meaning to ask the same kind of question. I think if we looked hard enough, we could find dozens and dozens of cases. Because the point is, Loewenke and Foltz were obviously in the context of third parties. But the same thing has to apply to contracting parties. And the reason is that where a contracting party acts, whether as opposed to failing to act, and that's the difference obviously in Loewenke, where that contracting party acts and they act negligently, you cannot be confined for recourse for that injury, particularly physical injury, to the contract. You can't... Why not? Why not? I mean, normally, a party's rights vis-a-vis the other contracting party with respect to the very duties prescribed in the contract are governed by contract, not tort law. They are governed by tort law, I'm sorry to say, with respect to any type of misfeasance, any type of act. But we're talking about negligence. The Supreme Court... I'm sorry. I'm sorry. No. Okay. But I mean, negligence, you know, I mean, that's... The Supreme Court sat in Loewenke. They used the word undertaking. Where you undertake and you act negligently, then you are, in fact, guilty or responsible in tort. That is... And it exists in many, many places. I cited in my reply brief, I think, five cases from this court which talked about the... They may have been totally in contract law, but the simple fact is they applied the same analysis to the distinction between contract and tort that Loewenke used. The fact is that if you had a situation, even if you had a situation which says, here's what you're supposed to do, a contract, if you do something, just if you do something that is, in fact, injurious to another party, a contracting party or a third party, and Hart v. Ludwig, and if you read Loewenke closely, say it can be both contract or tort. I don't know how far one can take that. But isn't it fair, though, Mr. Granzato, to say that many breaches of contract, things that we would just normally just understand as a straight-up breach of contract, you promised to notify the police and you didn't. Straight-up breach of contract. Many breaches of contract are also going to give rise to tort liability under your theory. No. No. The one you just described does not under Loewenke. No, it doesn't. And the reason it doesn't is because tort law, I don't know how it works elsewhere, but tort law draws a dramatic distinction and always has between acting and failing to act. What you're describing is failing to act. And I'm talking about something that... It's easy to recast that. You know, how about the reason they failed to act is they didn't get a warning signal and they didn't get a warning signal because they improperly installed the wiring for the system. Just hypothetically. Yeah. That's acting. That's acting. And it's negligent and it was a breach of their obligations and so now they can be sued in tort and contract? Well, I don't know if anybody would pick contract, but the simple fact is, the simple fact is, it is a tort. And remember the key word I take from Loewenke is undertaking. They have undertaken. In this case, for example, there are two undertakings that we have cited to that do in fact give rise to tort liability. And that it's obviously the design of the system and the installation of the system. Those are acts. And under Loewenke, and you compare Loewenke to Hart v. Ludwig, and I should think many, many other cases. I couldn't find it. Too bad. I didn't... I mean, I'm very sympathetic to your client's plight, I will say, but I'm quite concerned about creating a parallel regime of tort regulation and contractual duties. This is something I would ask you to go back to Hart v. Ludwig because this is the wrestling match that exists intellectually in this particular area with the intersection of tort and contract. But Hart v. Ludwig says precisely what I've been saying and precisely what Loewenke says. The distinction that has to be drawn is between misfeasance and nonfeasance. That's what Hart said a long time ago, well-established Michigan law. You would be breaking no new ground if you recognize in this case that there is in fact potential tort liability for the two active components of this. I'm going to move on to... Could you address Spengler, how Spengler would apply here in your view? Yes. Spengler apparently is being argued on two points. One is in fact on the limitation of any liability and on the limitation of damages. The limitation of damages clearly doesn't apply with respect to Spengler precisely because the only two issues raised by the plaintiff to try to defeat the limitation of damages were I think the Michigan Consumer Protection Act and unconscionability. There was no discussion in Spengler as to gross negligence, which I don't think there's any debate under Michigan law that gross negligence is in fact an exception to a limitation on damages. With respect to the other issue, that is whether the limitation on liability, I would first of all say to you that clearly Spengler was decided in the interregnum, if you will, between Foltz and Loewenke. It did not have access to Loewenke. However, what's more important is, and maybe this is the answer to your question, the court made a specific point of saying that this was nonfeasance.  Spengler. Spengler made the point that this was in fact nonfeasance. It's so easy to manipulate that. That's correct. It is. Foltz says it's slippery. That's what Foltz says. This is a slippery concept. I think the word to take from Loewenke is in fact undertaking. When you undertake to do something, you have a duty independent of the contract. The point of Loewenke, if I can, the point of Loewenke is what happens if you throw the contract out? Specifically, Justice Kavanaugh said in Loewenke, put the contract aside. Don't read the contract. Now, in that situation, does this person have a duty under the common law? They don't have a duty to call the police absent the contract. They don't have a duty, they don't have a duty, regrettably, under tort law to call the police. And again, that's because of the long line of cases in Michigan. I hope that's not a commentary. If I can just change the subject, and that is the fraudulent inducement claim. There are a couple of cases, if you will, that are important that have been released if you're interested. The fraudulent inducement was based on the merger clause. There's been what I think is a very significant court of appeals clarification, yet another area of the effect of a merger clause, the UAW-GM case is what's cited for this. There's been a recent decision from the Michigan Court of Appeals called Barclay, B-A-R-C-L-A-E versus Zarb, Z-A-B, it's 834-N-W-2-D-100. And Barclay versus Zarb says that there is a big distinction playing off on UAW versus GM. Big distinction between a fraudulent statement that induces a contract and collateral agreements, that's UAW versus GM, collateral agreements that are not incorporated into a contract. All of this, if I can, is probably moot in light of the fact that the Michigan Supreme Court's most recent pronouncement in 2012 in the Titan v. Hyten case actually eliminates the reasonableness requirement for a fraud claim. Interestingly enough, the whole idea of UAW and their argument with respect to fraudulent concealment is that in light of the merger clause, it's unreasonable to rely on lies. That's basically the point. But Titan versus Hyten, interestingly, has eliminated reasonableness as a- That was an insurance case, right? I had another case this week, it was all about Titan. But we're all hopeful that the Michigan Supreme Court will apply an insurance case elsewhere. Yeah, we'll see if- I don't know, Mr. Granzato. We're both from there. You might have to- don't hold your breath. Thank you, Mr. Granzato. Good morning. Good morning. May it please the Court. Nothing has changed about Michigan law since Spengler. Well, Loewke came down, right? Loewke came down, but Loewke didn't- one, it didn't change the law, and two, it applies in an area of tort law that we're not dealing with here. Here we're dealing with a case that involves two commercial entities that entered into a contract. The only thing that Loewke did was said- and it didn't overrule Foltz at all. It just said, since Foltz, courts have gotten the wrong idea that if I have a contract with another company, just because I'm performing under that contract, I now have a shield from tort liability vis-a-vis the rest of the world. And as against claims brought by third parties who are injured by a peril created in the performance of the contract, the Loewke case said, you don't get to use the fact that you're working under a contract as a get-out-of-jail-free card vis-a-vis the entire world. And I think this court in the Davis case characterized that very well in one sentence, and it said something very much like that, that the fact you have a contract that defines two parties' relationship does not define those parties' relationship vis-a-vis the rest of the world. And that was the clarification- But Loewke isn't limited to that, is it? It arose in that context, clearly, because it's talking about Foltz, and it arises in that context, but isn't the analysis just completely related beyond just that narrow? I'm looking at the analysis of—let me find the quote, because I thought it was very important. In Loewke, the court wrote that, under the separate and distinct mode of analysis, entering into a contract with another pursuant to which one party promises to do something does not alter the fact that there exists a preexisting obligation or duty to avoid harm when one acts. The analysis there appears to me to apply beyond just the, you and I have a contract, and I drop a cement block on Judge Cole, and can he come against me? Isn't it about—and doesn't the analysis itself address separate duties that you and I have to one another, even though we are in a contractual relationship? The short answer to that is I think, yes, the analysis could be similar, and it still speaks to the same thing, though. What Loewke did was adopted contract law, contract tort separation principles that existed between the contracting parties, and expanded those concepts in the third-party setting, and its holding was limited to that. But all of the law that it cites, by and large, other than the Foltz case, arises out of the direct contract situation. So for instance, like the hypothetical that we included in our brief, the fact that if we set out to perform under a contract, we're out on a job site installing an alarm under that contract, and we're hammering on the roof, and the agent throws his hammer off the roof, and it hits somebody, whether it hits the owner of the business, who is a party to the contract, or whether it hits an innocent bystander. To your point, you might have tort liability there, because without reference to the contract, whether I'm on the roof just for fun fixing things, or because I have a contract, I have a duty not to create a hazard that could hurt somebody with or without reference to the contract. And so then if you go back to Spengler, and all of the case law that has not changed on the duty analysis since Spengler, the two prongs for whether or not you have a duty in tort that can arise out of a contractual performance remain the same. And the first question, it's not this slippery slope about misfeasance, nonfeasance. There's been half a dozen Michigan and federal opinions out of this court interpreting Michigan law that say, prong one, you start with, is there a separate and distinct duty in tort that would exist in tort even in the absence of the contract? If you satisfy that, then, and this is in Foltz's conclusion, then you look to see, did it arise out of active negligence or misfeasance? But misfeasance, as the case law explains it, doesn't mean you're just scrutinizing the contract performance saying, could you have done a better job? Or did you not perform under the contract as well as we would have liked? It's instead, you did an affirmative act that created a new peril or a new hazard that but for your action, that hazard didn't exist. So if you use the example of the guy working on the roof and he throws the hammer off the roof, whether he's there in contract or whether he's there just on his own, that peril didn't exist but for the fact that he did that act on the roof. On the other hand, even setting aside the duty component, which is where it ends here, because the duty to install the alarm system the way they thought it was going to be installed and to properly respond if you get alarm signals, all arises out of the contract, but if under Spengler and the framework that Spengler properly adopted from Michigan, if you look at, if you get to the non-feasance question and ask, was there a peril created or some sort of hazard that was created that wouldn't have existed but for the answer to that is also no, because the risk that this involved was somebody might break in and steal your valuables. The criminals created that risk by deciding to try and break in and steal jewelry. That's not something that if ADT did or did not install an alarm system, would have existed. That exists separate. And so even if you get to the whole. So is your position that if you engage in your performance in a negligent or even a grossly negligent way, you are protected from anything save express remedies under the contract? You have no duty to perform in a way that's not grossly negligent? We have a duty to perform in a manner that's not grossly negligent if there is a separate and distinct duty created at the common law. But anything under the contract is limited to the letter of the contract, the duties that the parties express to one another and agree to by the terms of the commercial contract. So if common law creates a duty in relationship between you and the party with whom you contract, then they have a cause of action. If you follow Spengler and all of the Michigan cases that Spengler followed, that's been the law all along, yeah, if there is a separate and independent duty that would exist without reference to the contract, and if your conduct is misfeasance or creates a hazard or peril that would not have existed but for your conduct, then yes. Then you can have tort and contract existing out of the same set of factual circumstances. But- I guess, I mean, to maybe try to apply the distinction you're talking about here, would it be your argument then that if ADT, when they were installing the system, left the back door of the jewelry store open, and then that night burglars came in and committed the same burglary, that they would be liable in tort there because they enhanced a hazard or risk that was already present. But that's different than not diminishing the risk in the manner that the parties contracted for. I certainly think that that example would get you a lot closer to the way the test is laid out. Can I ask you, I don't mean to derail, did you want to ask? I was going to ask about the false advertising. Yeah, let me follow up on that. So under your analysis, if you enter, if ADT enters an agreement with me to monitor my home, to protect me, and then they decide, I'm not going to put in that system. I'm not going to monitor that system. They had no, you would say under that, the only remedy I have if I didn't go out and contract with someone else, if I didn't protect myself in some other way, my only remedy for your flagrant refusal to perform what I've paid you to do is whatever is in the contract and whatever limitations are in the contract on my remedy. Would be, yes, under Michigan law, it would be to sue on the contract. Because there you haven't satisfied either prong of what would create a separate tort duty, unless the facts had something that gave rise to a fraud or a statutory claim. But if we're suing under negligence or gross negligence, what you have just described is not performing at all. I mean, even if it's an intentional breach, there's policy bases, there's the whole economically justified intentional breach. The whole idea behind contract law is that sometimes it's advantageous to breach. And that is sometimes the reason parties do breach on purpose, which if you're on a continuum, would be worse than a very reckless breach if such a thing existed. So yeah, in that instance, if you sign a contract and somebody doesn't do it, your remedy is not in tort law, it's to sue on the contract. And based on Michigan law, you would fail both of the components that you would need to assert a tort claim. Because there's not a duty separate and independent from your decision to hire a company to install the alarm to do it. And secondly, even if there were such a duty, if you go to the misfeasance, non-feasance dichotomy, which is, it kind of takes the back seat anymore under Michigan law, you have complete non-feasance. But the party decided altogether not to perform. So you would be suing under contract. Yeah, and on a 12B6 motion, if the party, if the plaintiff is alleging a breach of an independent duty, wouldn't that survive a 12B6 motion? Well, not if as a matter of law as the court construed it here. The allegations of the complaint very, very clearly just stated duties that arose out of the contract. In fact, I think some of the paragraphs of the complaint sound like they're asserting a contract breach and then it's just wrapped into a negligence claim. So the district court in this case did exactly as it should have done, which was to accept as true the allegations and look at the source of the duty. And ask whether or not if we sweep away this contract, do you have a duty to properly install, monitor, maintain an alarm system and correctly answered under Spengler, that the answer to that is no. I interrupted you. No, not at all. Judge Schranch, I'm pretty skeptical that this was puffery, just to be candid with you. I mean, I think it was a pretty specific representation of objective fact. And so, I mean, you can respond to that, but really what I'm interested in is whether you think that the, I mean, Michigan courts, as I understand it, have said you cannot have a fraud claim if the representation is simply a future promise. Correct. And, but I think that you, and you say that that doctrine carries over to false advertising. But I think the Michigan courts have applied that with respect to section 445351, and here it's a 315 case. Does that matter in your view, or how do you extend that, the application of that one section to this one? Well, to be candid, that's not an issue that we looked at in terms of. This is a statutory issue, and whether there's overlap. I think probably the easier basis would be you have several grounds, the district judge had four separate grounds on which she dismissed the fraud and statutory fraud claims. One of which was a 9B analysis, which the district court, of course, has broad discretion, particularly after one amendment has been allowed and no request for a further amendment was allowed to dismiss under 9B. And did, because the complaint is clearly lacking the who, what, where, when that would be required to satisfy 9B. And the issue on the reliance prong, I think, I didn't hear anything from counsel's description of these new Michigan cases. That based on what was reduced to writing, where you have a signature acknowledging that this is merged into our full understanding of the agreement. That you can't then later assert that you've relied upon something that, whether it's puffery, sloganing, or whether it is a fact representation. You can't look back and say, well, that was the only reason I entered it, when you got a merger and integration clause that says to the contrary. That does defeat any sort of reliance component and the reasonableness of the fraud claim altogether. And I think even if you don't get down into the weeds of whether or not you need to look to a different section of the Michigan consumer protection statutes, there are ample bases. There's four separate bases on which you could affirm the dismissal of the statutory count as well as the common law fraud count. And any one of those is sound based on the district court's reasoning. But if the allegation is that the fraud itself is in the contract, would that survive a 12 v 6 motion? If the allegation were made and not deficient, that the integration clause was fraudulently induced, or that there was some legal deficiency with the integration clause. Then the answer under Michigan law is yes, that might allow the fraud claim to survive. But that argument has never been made. There was never anything contesting the validity of the contract. It's what was promised in the contract and whether I got what I thought I was getting in this contract. So the fraud claims never attacked the validity of entering the contract or the validity in particular, which is what the key distinction is under the UAW case and the Cook case, which is out of this circuit applying Michigan law, is was the merger and integration clause valid? And was the validity of that clause on fraud or other grounds ever contested? And the answer to that is no, and that's why that claim failed. Maybe I'm not clear. I thought there was an argument that not that there was a promise in the inducement, but that the court below held that the UL certificate was a part of the contract, and the UL certificate doesn't make a promise. The UL certificate says, we have installed this type of facility in your business. And it will perform as it is supposed to perform. That's the warranty in the UL. Now the court below held, that's part of the contract. If that's a lie, isn't that fraud within the contract? No, I think if that were true, then any time you had a warranty, and whatever you ended up with, you later discovered didn't meet what the warranty was, every warranty claim is a fraud claim, which is why there's the body of case law. And your answer includes a warrant that you have performed. Because not a warrant of, this is a great product, and it'll be better than anything else you can ever buy. But a warrant that I have accomplished this part of my job. I have installed this item in your business, when in fact you have not. Is that not fraud within the contract? Not a representation of a promise, but a representation of something not done. I still think that comes back to if it's part and parcel of the contract, and you warranted that this system that I installed meets this, and then it doesn't. I'm sorry, my question is, if you warranted that you had installed it. Not what it does, but you said, here's the piece of paper, it's part of the contract, it says I have done this, and you have not done that. I don't think that meets all the common law elements of a fraud claim. I still think we're within warranty and contract law under those facts. A fraud claim has a lot of heightened requirements that you're not gonna get just by representing on a piece of paper, this is what we're installing. And if it later doesn't meet the elements of what you said you installed, you're still within contract law, unless you've met all the common law fraud elements, and I don't think that scenario does. And as a factual clarification, the UL certificate argument that was presented to the district court about that being a separate contract, and whether or not that separately gave rise to a different cause of action, that has been abandoned on the appeal. That was an argument, the separate UL contract argument was- Yeah, they lost that. They lost that and they didn't appeal it either. What I'm talking about is the decision of the district court that is before us, in which the district court said, the UL certificate saying, I have installed this equipment, is part of the contract. It's not separate, because that's what the district court held. Correct. So it's part of the contract, it's not separate, that's what my question, and I think you've given me your response, thank you. Thank you. Thank you, Mr. Evelyn. You've got your rebuttal, Mr. Gonzalo. A brief comment on your question regarding future promises in a fraud situation. Michigan has a very, very significant exception to that, a fraud in the inducement. The Bogola case, Belisle Grill, they're both cited in the brief, and it's explicitly predicated on promises of what somebody's going to do in the future. So when you are inducing somebody fraudulently to get involved in a contract, that's a complete exception to the usual rule. Okay, that's helpful. Getting back to your question before, I came here thinking Spengler was something that was in their favor. But it's not now, in light of the questions that you've asked with respect to the distinction between tort and contract. Because in Spengler, this court actually cited the case I referred to the first time, Hart v Ludwig. And they are talking about the existence of a tort action between two contracting parties. Obviously, it's the same sort of case. Spengler, it involves an alarm system. And it said, citing Hart, the court held that where the only violation was that of a broken promise to perform a contract. And there existed no independent duty outside the contract. Liability must rest solely on breach of contract. Now the question I would ask you to ask yourself is why is that statement in Spengler? If your assessment of the distinction between tort and contract is correct, this statement did not have to be made in Spengler. The simple fact is they were referring to Hart versus Ludwig. They were referring to the distinction between tort and contract established in Hart versus Ludwig. And they were referring to a case that happened to be a cause of action between two contracting parties. Mm-hm, so I'm having a little trouble following you here. It's okay. So you would say Spengler comes out the way it does nonetheless because it's a non-feasance case? Of course. That's correct. They say specifically in it. I got it right. It would have been embarrassing if I didn't, right? No, but the point is, the point is, and again, Hart versus Ludwig is the first case that I would cite to you. If I knew you were going to ask these questions, I really could come up with a lot of cases involving contracting parties and a tort arising out of the contracting parties. I won't hold that against, I'm serious, I will not hold that omission against you. Okay, I didn't think it was an issue, actually, before the court at the present time. But let me close by citing to you what Loecki says about contracts. Determining whether a duty arises separately and distinctly from the contractual agreement generally does not necessarily involve reading the contract, noting the obligations required by it, and determining whether the plaintiff's injury was contemplated by the contract. In other words, if you're determining duty under Michigan law, and it happens to be duty that is associated with the performance of the contract, throw the contract out and determine on that basis, is there a common law duty? And again, the common law duty that exists in Loecki and existed in Clark versus Dolman and Hart versus Ludwig long before is every person engaged in any undertaking, any undertaking, has a common law duty of due care under Michigan law. They act, once you act, you have a common law duty to act in a non-negligent fashion. Thank you. Okay, thank you, Mr. Branzato and Mr. Eblen. We certainly appreciate your arguments today. The case will be submitted. I think the remaining cases on our docket have been submitted on the briefs. There's no need for you to call those cases, so at this point, you can adjourn court.